## CALEDONIA COUNTY.

### March Term, 1835.

Present; Hon. STEPHEN ROYCE,
　　　"　　　"　JACOB COLLAMER, } *Assistant Justices.*
　　　"　　　"　JOHN MATTOCKS,

Caledonia,
March,
1835

### Warner *vs.* Swett and Way.

An order of a justice of the peace, in pursuance of the 20th section of the act of March 3d, A. D. 1797, relating to legal settlement, and the support of the poor, is not an essential pre-requisite to the exercise of the power to bind out poor children as apprentices, which is vested in the overseers of the poor by the 18th section of said statute.

Nor is it required, to authorize such a binding by the overseers, that the child should be permanently chargeable to the town. In A. D. 1826 a widow with her children became chargeable, and were relieved by the town; she went out to service, and her children were placed by the overseers in different families, where they remained till A. D. 1832. One of the children, of tender age, was thus received by the plaintiff, in A. D. 1826, with the assent of the mother, and under a promise of the overseers to bind him to the plaintiff by indentures of apprenticeship. *Held* that the overseers might lawfully execute indentures to the plaintiff in A. D. 1832, although the town had incurred no actual expense in supporting the child since A. D. 1826.

Such children may be bound by the overseers to farmers, as well as to tradesmen and mechanics.

This was an action of trespass on the case, for enticing away from the plaintiff's service one Butler E. Shipman. The declaration contained two counts; the first describing the said Butler E. as the apprentice of the plaintiff, and the second as his servant. A verdict and judgment having passed for the plaintiff in the county court, the cause was brought here on exceptions taken by the defendants. The facts appearing on trial were substantially these :—

The plaintiff gave evidence tending to show that as early as 1825, Butler Shipman, father of the said Butler E. Shipman, had

CALEDONIA,
*March*,
1835.
Warner
*vs*
Swett & Way.

his residence in Hardwick, and was poor and sick with a consumption and finally died, leaving a widow and several children, and among whom was this Butler E. then about two or three years old. That during the sickness, being in need of relief, he was from time to time furnished by the overseers with provisions, and a cow was hired for his use, and his funeral charges paid. After the death of said Butler, the widow then resided with the children unassisted by the town, except having the use of said cow for the space of a year or more, when the overseers of the poor were informed she was in need of relief, whereupon they proceeded to make inquiry. They found the family in very necessitous circumstances, and in need of relief. It was cold weather, and they made provisions for some wood, &c. The woman found a place for one of the daughters, which the overseers approved. The woman thought she could get on if this boy, Butler E. could be put out; and the overseers then agreed with the plaintiff to take him, if the mother was willing. The plaintiff saw the mother, and she consented. The overseers agreed with the plaintiff to take the boy until 21 years of age, and gave the plaintiff ten dollars, and the boy went there to live, and remained until enticed away by the defendants, as herein after stated. The overseers agreed to bind the boy to the plaintiff. The overseers then found a place for said mother at Mr. Powers', whom they hired to board her, and she went there and remained about nine months, and then went out to service, and has never kept house since.

The plaintiff then offered evidence tending to show the overseers' executed indentures of said boy to the plaintiff. The defendants objected to the introduction of such proof unless a certified copy of the record of the appointment of said overseers was produced, but it appearing they were acting overseers, this objection was overruled. The plaintiff introduced evidence tending to prove that soon after said boy went to the plaintiff's to live, the plaintiff and the two overseers met to make indentures, which were drawn according to the form in the book, called *Practical Forms.* The witness could not so distinctly recollect the *execution* of indentures as directly and positively to testify thereto; but testified they met for that purpose, they wrote the indenture, that they recollect nothing interrupting or breaking off the business, and they had ever supposed and believed the indenture was duly executed and left with one of the overseers to lodge with the town clerk, for the benefit of both parties, as was the usage in town; but that recently search had been made with said overseer and in the town clerk's

CALEDONIA,
March,
1835

Warner
vs.
Swett & Way.

office, and said indenture could not be found.   The defendant ob-
jected that parol proof of the contents of said paper should be ad-
mitted to the jury; but the court overruled the objection and ad-
mitted the proof.   The plaintiff also read in evidence the inden-
ture hereto attached, dated June 25, 1832, which the then overseer
executed to the plaintiff on learning the bargain by which said boy
was put to him, and being informed that no indenture could be
found.   The plaintiff gave evidence tending to prove that in July
1832, he had sent the boy on his horse a mile or two from home
on business, when he fell in with the defendants, who said that to
him which induced him to go away with them to his mother, and
he had by her been put to another man and had not returned.

The defendants read in evidence the deposition of Levi Sanborn
hereto attached, and also a letter of guardianship to the mother,
dated June 26, 1832, hereto annexed, and testimony tending to
prove she had called for her boy both on the overseer and the
plaintiff.

The defendant requested the court to charge the jury, that there
was not sufficient testimony to entitle the plaintiff to recover by
virtue of the pretended indenture of 1826.   That the relation of
overseers and pauper, so as to enable the overseer to bind the chil-
dren as apprentices, could not be created by occasional acts of
charity and relief afforded by the town; but the steps of the stat-
ute must be followed, and there must have been the application of
the mother, and the assistance afforded must have been of a per-
manent character, and ordered by a justice of the peace.   That if
the mother at the time of making the last indenture of the boy was
not dependant on the town, receiving aid and assistance as a pau-
per, but was actually supporting and of ability to support herself
and children, said last deed of indenture was void.   That the let-
ter of guardianship gave the legal custody of the boy to the mother,
and she had a legal right to claim the custody of the child, and if
the defendants acted upon her request, the plaintiff was not enti-
tled to recover.   That the boy could not be apprenticed to the
business of farming, and if such was the indenture of 1826, it was
void, and the jury must find the fact proved that the defendant
*knew* that Butler E. Shipman was the apprentice of the plaintiff or the
plaintiff cannot recover.   The count charged the jury they would first
inquire whether But'er E. Shipman was enticed away from the plain-
tiff by the defendants.   If this was not proved to find for the de-
fendants, but if it was proved they would next proceed to inquire
whether he was bound legally to the plaintiff as an apprentice by

the overseers of the poor.  This might be done as well to a farmer
as a tradesman.   If the jury found the widow was found by the
overseers poor and in need of relief, unable to support herself and
children, and they proceeded to provide for her and her children,
which provision they received, the overseers were authorized to
bind out the boy, more especially if so requested by the mother,
though there had been no previous formal application of the moth-
er for relief, or no *permanent* provision for support been provided
by the town, nor ordered by a justice of the peace.   The jury
would inquire whether they were convinced from the testimony (if
they found the family then chargable) that an indenture of appren-
ticeship was actually executed, signed, sealed, and delivered by
the overseers to the plaintiff, and what were its contents, and if so
convinced they would find for the plaintiff.   If the jury were not
satisfied as to the pretended indenture of 1826, they would next
inquire as to the one of 1832.   If the child remained where put in
1826 by the overseers, it did authorize the overseer in 1832 to
bind out the boy unless the mother was then of sufficient ability to
maintain the child.   But if the mother was then both able and
willing to maintain the child, the overseer was not then authorized
to bind him out to the plaintiff, and they would treat that inden-
ture as of no avail.   If the boy was not the *apprentice* of the
plaintiff by deed of indenture, he was merely his servant, subject
to the control of his mother and guardian ; and the plaintiff in that
case could maintain no action against the defendants for enticing
him away, if they acted under her authority or request, otherwise
he could.   It was not necessary for the plaintiff to prove the de-
fendants *knew* the boy to be his apprentice.   If they enticed him
away from the plaintiff they did so at their own peril.   If the jury
found for the plaintiff they would find such damages as to them
should seem just, accruing to the plaintiff to the commencement
of the action.

The deposition of Levi Sanburn tended to show,—That Harriet
Shipman, the mother of said Butler E., had served in his family at
weekly wages for several years next previous to the trial; that she
was a healthy, industrious, and economical woman ;—that she had
a note of thirty-three dollars, which came by way of her husband,
and which was collected for her benefit ;—that she had been ena-
bled to contribute something towards the clothing of her daughters ;
—and that when said Butler E. left the plaintiff's service, the wit-
ness was indebted to said Harriet for wages about the sum of forty-
four dollars.

CALEDONIA,
March,
1835.
———
Warner
vs.
Swett & Way.

Mr. *Fletcher* for *defendants*.

Mr. *Bell* for *plaintiff*.

The opinion of the court was delivered by

ROYCE, J.—The questions to be decided in this case arise under the first count in the declaration; since the evidence on trial, and the charge of the judge, would seem to be decisive against the second count, if the first is not supported.

It was decided in *Squire* vs. *Whipple*, 1 Vt. Rep. 69, that the relation of master and apprentice can be created only by deed, and we are not aware that the authority of that case has been controverted. The plaintiff claimed that this relation had been duly created between himself and the alledged apprentice, Butler E. Shipman, by indentures of apprsnticeship executed by the overseers of the poor for the town of Hardwick, in A. D. 1826, or A. D. 1832. He read in evidence an indenture bearing date June 25th A. D. 1832, and introduced testimony tending to prove, that a similar one was duly executed in 1826, which was lodged in the office of the town clerk for the use of both parties, and had subsequently been lost, or destroyed by accident. The jury were instructed to inquire, whether, at each of the periods aforesaid, the family to which the boy belonged was in such a state of destitution and poverty as would authorise the overseers to act, and whether the alleged indenture of 1826 was in fact executed. In returning a verdict for the plaintiff they have therefore found, that the indenture of A. D. 1826 was executed, and under proper circumstances to give it validity; or that the family were in a condition which justified the binding by indenture as well in A. D. 1832 as in A. D. 826. In this state of the case, the only subject for consideration is the construction of the statute adopted by the court below.

We think the jury were correctly charged that an order of a justice of the peace, in pursuance of the 20th section of the statute, was not a necessary pre-requisite to a lawful binding by the overseers; and that it was not required that the family should be in a condition of fixed and lasting dependence on the town for support. The 18th section, under which these proceedings were had, confers a discretionary authority upon the overseers of the poor of the several towns, to bind out as apprentices "all such children as are chargable to such towns, or who do not employ themselves in some lawful business, and whose parents are unable to maintain them, and do not bind them out in good families." Here are two cases given in which the overseers are empowered to act; and it is only in the first (when the child is actually chargeable,) that the idea of an or-

der under the 20th section would ever be suggested. That provision was intended to protect the towns against indefinite and unreasonable charges for the support of their poor, but has no application to the exercise of the power in question. And besides, the overseers are authorized to charge their towns, to a limited extent, without such order.

The main object of the 18th section appears to be, to provide for the town a mode of relief from existing burthens, or a means of protection against such as they may reasonably anticipate. It is true, that the probable advantage of the child is also consulted ; but as the power vested in the overseers is a power in derogation of parental rights, and may sometimes operate with great severity upon the prospects and fortunes of the child, it should be confined to those cases which come within the evident intention and policy of the statute. There is no reason to doubt that the overseers were authorized to bind out this child in A. D. 1826. He, with his mother and the other children, then needed, and actually received assistance from the town ; the family was then separated, because the mother had no means of supporting herself or children ; and this boy was received by the plaintiff, under a contract of the overseers to bind him permanently as an apprentice. But as the jury may have thought the execution of the first indenture not sufficiently proved, and may have founded their verdict on the binding in A. D. 1832, it becomes necessary to consider the case with reference to that also. The jury were charged that, as the boy still remained with the plaintiff, where the overseers had placed him in A. D. 1826, the validity of the last indenture would depend on the question, whether his mother was then able and willing to support him. Of her willingness to take him from the plaintiff at that time the case furnishes abundant evidence. We are therefore at liberty to infer, if the jury proceeded upon the last indenture, that they have negatived the latter fact, by finding that she was not of sufficient ability to support him. As the measure of ability here prescribed by the judge was limited to the support of this single child, perhaps a different finding might have been expected. Of this, however, the jury were the proper judges. It was not necessary that the mother or children should then have been actually dependant on the town for relief. The overseers retained their power to act, in virtue of the assistance previously furnished, so long as the mother had not resumed the management of her family, had not bound out her children, and continued unable to support them.

It was further objected to the validity of these indentures that

CALEDONIA,
March,
1835.
—————
Warner
vs
Swett & Way.

the plaintiff was a farmer. The usual definition of apprenticeship at common law is the binding of one to learn a trade. And the business of agriculture alone may not originally have been regarded as a trade for this purpose. No express authority, however, is produced to this effect, and intimations are not wanting to the contrary. 1 Bl. C. 426. But however this may be, there is no ground to doubt the proper construction of our statute. Its object, as already alluded to, is more comprehensive than the mere advancement of professional and mechanic arts. And hence we account for the provision for binding out girls as well as boys, under the designation of apprentices, till their respective ages of eighteen and twenty-one years, the former "to do such work and business as may be suitable to their circumstances and condition." This species of apprenticeship, thus indifferently applied to children of both sexes, derives a peculiar definition and import from the statute. It means to secure to the child *a suitable bringing up,* to some lawful business or employment.

Judgment of the county court affirmed.