#### FOR THE

## COUNTY OF ESSEX.

### August Term, 1850.

PRESENT,

Hon. STEPHEN ROYCE, Chief Judge.
Hon. MILO L. BENNETT, } Assistant Judges.
Hon. LUKE P. POLAND,

---

## Isaac R. Houston v. Moses C. Kimball, Harlon Keyes, Cyrus Smith and John S. Pike.

A child, six years of age, was chargeable to a town as a pauper, and the plaintiff, at a legal town meeting, agreed with the town, that he would board the child one year, at a specified price per week. *Held*, that the plaintiff thereby acquired the right to the custody and control of the child for the year, and that the overseer of the poor of the town had no authority to interfere with the plaintiff's exercise of this right.

*Held*, also, that the father of the child, who was himself a vagrant, without any settled residence or means of support, could not, by his consent, authorize the overseer of the poor to remove the child from the custody of the plaintiff during the year.

TRESPASS *qu. cl. freg.*, for breaking and entering the plaintiff's dwelling house in the town of Victory. Plea, the general issue, with notice of special matter of defence, and trial by jury, May Term, 1849,—POLAND, J., presiding.

On trial the plaintiff gave evidence tending to prove, that in the latter part of March, 1847, the defendants, together with one Reuben Dunton, came to his house, during his absence, and demanded admittance,—which was refused by the plaintiff's wife, who was within; that Dunton then demanded his boy, who was also in the plaintiff's house,—to which the plaintiff's wife replied, that she had no authority to let the boy go; and that, after considerable talk between the defendants and the plaintiff's wife, the defendants opened the door from the outside, the latch string being pulled in, and went in and took the boy and carried him away. The plaintiff proved, that the boy was about six years of age, and was a pauper, chargeable to the town of Victory, and that he had been supported by the town and by the charity of his relatives since his early infancy; that Reuben Dunton, the father of the boy, possessed no property, and had no settled home, but led a wandering, vagrant kind of life, and had never contributed to the support of the child; and that the child's mother died, when he was but one or two days old, and since that time the child had generally resided in the family of the plaintiff, who was his uncle. The plaintiff claimed the custody of the child by virtue of a contract, made with the town of Victory at their annual town meeting in March, 1847; and it appeared, that at that meeting the plaintiff, in pursuance of a vote of the town, offered to support the child the ensuing year, at twenty five cents per week, and that this offer was accepted by the town.

The defendants gave evidence tending to prove, that the defendant Kimball was overseer of the poor of the town of Victory, duly elected at the annual meeting of the town in March, 1847, and that, as such overseer, he went with the said Reuben Dunton to the plaintiff's house, a day or two previous to the breaking and entering complained of by the plaintiff, and, with the consent of Dunton, took the boy and carried him to his, Kimball's, house, for the purpose of binding out the boy, so as to save the town any farther expense towards his support; that on the same day the plaintiff went to Kimball's house and took the boy and carried him back to his

own house, contrary to the wishes of Kimball and Dunton; that when the defendants went to the plaintiff's house and took the boy, as complained of by the plaintiff, they went for the boy, for the same purpose for which he was first taken; that Kimball was acting as overseer of the poor and the other defendants were acting as his assistants; and that Reuben Dunton consented and agreed to such arrangement. The defendants also offered in evidence articles of apprenticeship of the boy to one Asa Kimball, of Lancaster, New Hampshire, which were subsequently executed by the defendant Kimball, as overseer of poor, and by Reuben Dunton, the father; but this evidence was objected to by the plaintiff, and excluded by the court.

The court instructed the jury, that, upon these facts, the defendants could not justify a forcible entry into the plaintiff's house, for the purpose of taking away the boy, and that the plaintiff was entitled to recover his damages for breaking and entering his house;— but that, if the defendants acted in good faith, under a supposed right in law to do as they did, the plaintiff should not recover more than his actual damages.

The jury returned a verdict for the plaintiff. Exceptions by defendants.

*Bartlett* and *Bingham* for defendants.

The plaintiff agreed with the town to board the boy, for twenty five cents per week, for a year; and the question is, how far this agreement will control the powers of the overseer of the poor, or deprive the parent of his natural right to the custody of his own child. That a person, who, by his bid, agrees to board a pauper for the then ensuing year, acquires a right to the custody of the person of the pauper, against the overseer and the relatives and friends of the pauper, is a doctrine that is both new and extraordinary. If this be true, it is difficult to perceive, why the doctrine is not equally applicable to every case of hiring board for a definite term. The boy, in this case, was chargeable to the town; but it by no means follows, that he was doomed to be a perpetual pauper, or even for the time that the plaintiff agreed to board him. The parent was the natural guardian of the boy, and had the right to resume the custody and control of him, and bind him an apprentice, if he saw fit. A person chargeable is a pauper no longer than the force of

circumstances compels him. By sec. 23 of chap. 16 of Rev. St. overseers of the poor are empowered to bind out as apprentices all such children, as are chargeable to the town. This power the overseer derives from the statute, and not from the town; and no arrangement, which the town could make with the plaintiff concerning the boy, could divest the overseer of this right. And for the purpose of exercising this right, the overseer, after demanding admission, had authority to enter the plaintiff's house, doing no unnecessary damage, and take the boy.

*Fletcher & Heywood* for plaintiff.

It is provided by the Revised Statutes, chap. 16, sec. 24, that towns, at their annual March meetings, may dispose of their paupers in such manner, and make such provision for their support, as a majority of the inhabitants present shall agree upon. In this case the inhabitants of Victory exercised the authority given them by this law; and while the contract thus made was in existence, it of course superseded the authority of the overseer of the poor, and he had no right to enter the plaintiff's house to take the boy, and he and his assistants were guilty of a trespass in so doing. The presence of the father of the boy and his demand to have the boy delivered were of no validity. The parents of pauper children have no authority to dispose of them, or bind them out to service. Rev. St. c. 16, §§ 23, 24. *Warner* v. *Swett et al.,* 7 Vt. 446.

The opinion of the court was delivered by

POLAND, J. Admitting that the defendants are well grounded in their claim, that the defendant Kimball, as overseer of Victory, had the right, as against the plaintiff, to take the boy for the purpose of binding him out as an apprentice, it may well be doubted, whether that gave him a legal right to forcibly enter the plaintiff's house for the purpose of getting the boy into his possession. But this question has not been argued, and need not necessarily be determined, in order to decide the case. By the exceptions it appears, that the case, in the court below, was tried entirely upon the question, as to who had the legal right to the custody of the boy; and the case here has been placed upon the same ground. On examination of the facts proved at the trial, we are all agreed, that the plaintiff was

legally entitled to the custody of the boy, and that the county court took the correct view of the case.

The vote of the town of Victory, at their March meeting in 1847, and the plaintiff's bid under it and the acceptance thereof by the town we consider as amounting to a contract between the plaintiff and the town of Victory, that the plaintiff should keep the boy a year, that he was entitled to the custody and control of him, and was entitled to his earnings, if he was able to perform service of any value to him. From the very nature and object of all such contracts these conditions are implied; and in the present case, from the very small compensation the plaintiff was to receive, it is evident, that he contemplated some other object than mere pecuniary advantage by the board of the boy.

The facts disclosed show the boy to be a fixed and permanent charge upon the town; and by the statute the town had the right to make such a bargain for his yearly support, as they did make with the plaintiff, which they and the plaintiff would be bound to perform.

It is however urged, that the statute invests overseers of the poor with a superior and controlling authority over paupers, (especially as to binding out minors as apprentices,) paramount to the right of the town itself, or of any person, who has made a contract with the town for keeping or supporting such a pauper. This doctrine, upon its face, wears a somewhat singular appearance. The overseer is a mere agent, or servant, of the inhabitants of the town, appointed by them to perform for them, and on their behalf, duties imposed upon them by statute; and to hold that his powers are superior to those of his creators would be at least novel. But the statute itself furnishes a full answer to this objection. The second section of chapter sixteen of the Revised Statutes, prescribing the duties of overseers of the poor, provides, that the overseers shall see that poor and indigent persons shall be suitably relieved, &c., either in the poor house provided by the town, or in such other manner, as the town shall direct, or otherwise, at the discretion of said overseers, &c. From this section it is clear, that the overseer's discretion is only to be exercised in the absence of any action, or direction, in the premises by the town itself.

It is claimed, however, that the defendants had the assent and permission of the father of the boy, to take him away from the

Houston *v.* Kimball et al.

plaintiff for the purpose of binding him out, and that this gave them a legal right so to do. It appears, that the father had never furnished any support for the boy whatever, but had always left him to the charity of his other relatives, and of the town, for a support, and that at the very time in question he was wholly destitute of a home, or means of support, for himself, and much less of any ability to provide for the boy. It is not now necessary to enter into any discussion in relation to the rights of a parent, in the cases put by the defendants' counsel, where a man from a state of poverty and inability to furnish support for himself and family, and where the aid of the town is received, by some stroke of good fortune is suddenly raised to a state of affluence,—nor as to what effect such an unexpected change of circumstances would have upon contracts already entered into by towns for the support of such persons as paupers. We apprehend, however, that but little difficulty will be practically experienced in cases of this character, by a rigid and unyielding exaction of the fulfilment of such contracts.

In the present case no such change had taken place. The town of Victory for years had been obliged to assume what would have been the father's legal duty towards this boy, if he had possessed the ability, or disposition, to support him. In such a state of things the town had made a permanent contract for the boy's keeping, and the same state of facts still existed. It seems very clear to us, that the father could not come forward and claim to exercise the rights of a parent and natural guardian, and control and direct as to the custody and disposition of the boy, until he was also prepared to assume the obligations and liabilities of the same relation, and furnish the means of support. If the doctrine be true, that a pauper parent may at pleasure assume to interfere with and break up any contract, which the town may have made for the support of his pauper children, by virtue of his paternal right and authority, the burden and difficulty of supporting the poor will soon become much greater, than it ever has been. But we find no warrant in our statute, or in any general principle of law, for such a claim; and it appears to us wholly unsupported by any sound sense, or reason. These views of the rights and duties of the parent seem to be fully supported by the case of *Warner v. Swett et al.*, 7 Vt. 446.

Judgment affirmed.